ALLAN S. BLOOM
RACHEL S. PHILION
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendant*
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN BEACH,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>HSBC BANK USA, N.A.,<br><br>　　　　　　　Defendant. | No. 17 Civ. 5153 (WHP) |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HSBC'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page**

I. THE SHARE AWARD IS PLAINLY NOT "WAGES" UNDER THE NEW YORK LABOR LAW ........................................................................................................1

    A. The Share Award Had No Guaranteed Value, and Any Value It Might Have Had Was Independent of Plaintiff's Job Performance ...................................1

        1. The Share Award was not "wages" because it was tied to HSBC's financial performance, not Plaintiff's job performance or productivity ...................................................................................................2

        2. The Share Award was not based on Plaintiff's performance or productivity ...................................................................................................4

    B. The Share Award Was Not "Wages" Because It Was an Incentive to Accept Employment ...............................................................................................5

II. HSBC'S ALLEGED FAILURE TO PAY THE SECOND TRANCHE OF THE SHARE AWARD IS NOT A "DEDUCTION" WITHIN THE MEANING OF SECTION 193 ...............................................................................................................6

    A. Section 193 Does Not Cover An Alleged Wholesale Failures to Pay Wages .........................................................................................................................6

    B. Plaintiff's "Deduction" Theory is Implausible ........................................................8

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Econn v. Barclays Bank PLC*,
    No. 07 Civ. 2440 (BSJ), 2010 WL 9008868 (S.D.N.Y. June 10, 2010) .................................. 3

*Friedman v. Arenson Office Furnishings Inc.*,
    129 A.D.3d 525 (1st Dep't 2015) .............................................................................................. 5

*Gilman v. Marsh & McLennan Cos.*,
    868 F. Supp. 2d 118 (S.D.N.Y. 2012) ....................................................................................... 2

*Gold v. Am. Med. Alert Corp.*,
    No. 14 Civ. 5485 (JFK), 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015) .............................. 8, 10

*Goldberg v. Jacquet*,
    667 F. App'x 313 (2d Cir. 2016) ............................................................................................... 8

*Guiry v. Goldman, Sachs & Co.*,
    31 A.D.3d 70 (1st Dep't 2006) .......................................................................................... passim

*Hunter v. Deutsche Bank AG*,
    No. 0602791/2004, 2007 WL 4113676, *aff'd*, 56 A.D. 3d 274 (1st Dep't 2008) ...................... 5

*Locke v. Tom Jones Co.*,
    No. 11 Civ. 2961 (GBD), 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) .................................. 3

*Mathias v. Jacobs*,
    238 F. Supp. 2d 556 (S.D.N.Y. 2002) ....................................................................................... 4

*Monagle v. Scholastic, Inc.*,
    No. 06 Civ. 14342 (GEL), 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007) .................................... 8

*Moras v. Marco Polo Network, Inc.*,
    No. 11 Civ. 2081 (PAE), 2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012) ................................... 8

*Perella Weinberg Partners LLC v. Kramer*,
    153 A.D.3d 443 (1st Dep't 2017) ........................................................................................... 8, 9

*Ryan v. Kellogg Partners Institutional Servs.*,
    19 N.Y.3d 1 (2012) ................................................................................................................ 5, 6

*Truelove v. Ne. Capital & Advisory, Inc.*,
    95 N.Y.2d 220 (2000) ............................................................................................................... 2

*Tuttle v. George McQuesten Co.*,
   227 A.D.2d 754 (3d Dep't 1996) .................................................................................................. 2

*Wachter v. Kim*,
   82 A.D.3d 658 (1st Dep't 2011) .................................................................................................. 9

*Wachter v. Kim*,
   No. 650532/08, 2013 WL 144760 (Sup. Ct. N.Y. Cty. Jan. 11, 2013) ...................................... 9

**STATUTES**

New York Labor Law § 190 .................................................................................................... 1, 6, 8

New York Labor Law § 191 .......................................................................................................7, 8

New York Labor Law § 193 .................................................................................................. passim

New York Labor Law § 197, Consol. Laws C. 50 (repealed 1966) ................................................ 7

Plaintiff's opposition papers confirm that his Second Cause of Action fails under the plain language of New York Labor Law § 193 ("Section 193"). Plaintiff seeks the second installment of an award of unvested shares of HSBC stock (the "Share Award"). But Section 193 only applies to "wages" and to "deductions" from wages, and Plaintiff has alleged neither.

## I.   The Share Award Is Plainly Not "Wages" Under the New York Labor Law

Plaintiff's Second Cause of Action fails for the plain reason that the Share Award is, as a matter of law, not "earnings . . . for labor or services rendered." N.Y. Lab. L. § 190(1). As described in HSBC's opening brief, two aspects of Plaintiff's allegations put the Share Award outside the definition of "wages": the value of the Share Award had no relationship to Plaintiff's job performance, and Plaintiff concedes that the Share Award was an incentive for him to accept employment with HSBC, and not compensation for work he performed (Compl. ¶ 9). Plaintiff does not meaningfully refute either of these points in opposition to this motion.

### A.   The Share Award Had No Guaranteed Value, and Any Value It Might Have Had Was Independent of Plaintiff's Job Performance

Plaintiff's opposition is based on the fundamental misconception that the Share Award had a guaranteed value. (Opp. Br.[1] at 8, 10, n.1, 11.) But it did not. HSBC did not promise that Plaintiff would receive shares with any particular value—or with any value at all. To the contrary (and as Plaintiff concedes), on Plaintiff's first day of employment, HSBC used the value of its stock on that day to calculate the number of shares Plaintiff might be eligible to receive in subsequent years. (Compl. ¶¶ 14-17.) More than two years later, when Plaintiff would have received the second tranche of the Share Award (had he satisfied the vesting conditions), those shares might have been worth more than they were on Plaintiff's first day of employment, might have been worth less, or might have been worth nothing. But whatever the value, it would have

---

[1] "Opp. Br." refers to Plaintiff's Opposition to Defendant HSBC Bank USA, N.A.'s Motion to Dismiss, dated October 20, 2017 (Dkt. 19).

had no connection to Plaintiff's performance, productivity, or anything else Plaintiff had done in the two intervening years. Plaintiff's arguments in his opposition papers assume an alternate reality—that on the day he was to receive the second tranche of the Share Award, he was due stock worth 33% of the value used in the initial calculation more than two years earlier. But this is not what Plaintiff alleges in his Complaint (*see* Compl. ¶¶ 14, 17), and it is not consistent with the clear terms of the Share Award in Plaintiff's offer letter (*see* Pl. Decl.[2] Ex. A at 2).

1. *The Share Award was not "wages" because it was tied to HSBC's financial performance, not Plaintiff's job performance or productivity*

The settled law reiterated by the New York Court of Appeals in *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220 (2000)—that "wages" only includes compensation based on "personal productivity"—is the same whether an employer promises a share of future profits or an award of stock on some future date. *See Guiry v. Goldman, Sachs & Co.*, 31 A.D.3d 70, 72 (1st Dep't 2006) ("[T]he *Truelove* decision carries the unmistakable implication that plaintiff's unvested [stock units] and stock-option rights were not 'wages'"). Either type of promise may entice an employee to remain with an employer, but any value the employee ultimately receives will have, at most, a negligible relationship to the work the employee performs for the employer. *Truelove*, 95 N.Y.2d at 224 ("[T]he statute . . . contemplates a more direct relationship between an employee's own performance and the compensation to which that employee is entitled."); *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 136 (S.D.N.Y. 2012) ("Equity awards under [defendant's stock plan] do not vest when announced so the ultimate value of an [ ] award depends on [the defendant's] overall financial success, not on the personal productivity of the recipient employee."). Simply put, equity awards like the Share Awards are not "wages" protected by Section 193.

---

[2] "Pl. Decl." refers to the Declaration of Stephen Beach, dated October 19, 2017 (Doc. 19-1).

A case Plaintiff largely ignores, *Econn v. Barclays Bank PLC*, illustrates the distinction between "wages" on the one hand and non-wage compensation tied to an employer's overall performance on the other. Assessing the plaintiff's allegation that his employer had a policy of paying bonuses "based on the profits [the plaintiff] had generated," the court wrote that "[t]his description seems to leave open the possibility that the bonus . . . derived from a percentage formula based on Plaintiff's work." *Econn v. Barclays Bank PLC*, No. 07 Civ. 2440 (BSJ), 2010 WL 9008868, at *4 (S.D.N.Y. June 10, 2010). The court nonetheless dismissed the plaintiff's claim for equity compensation that "did not vest at the time it was announced" because "the value of the shares would be based on the overall financial success of Barclays rather than Plaintiff's individual productivity." *Id.* at *5. In attempting to distinguish *Guiry*, *Econn*, and the long line of other cases from both New York State appellate courts and federal courts within this district rejecting Labor Law claims for deferred equity awards, Plaintiff relies only on the false notion that the Share Award had a "guaranteed value." (*See* Opp. Br. at 10, n. 1 (arguing that the value of the Share Award "was set").)

For his argument that the definition of "wages" in Section 193 has been found to include deferred equity like the Share Award, Plaintiff relies exclusively on *Locke v. Tom Jones Co.*, No. 11 Civ. 2961 (GBD), 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013). (*See* Opp. Br. at 8.) But as HSBC explained in its opening brief (at pp. 6-7), *Locke* is no help to Plaintiff because it addressed only stock *options* and, indeed, noted that *shares* of stock—like the Share Award here—are not "wages." *See Locke*, 2013 WL 1340841 at *6. Beyond this important distinction, the *Locke* Court ignored *Guiry*, which years earlier held that "restricted shares of [an] employer's stock, *and options to purchase such stock*" are "as a matter of law, 'incentive compensation . . . not included in the definition of 'wages.'" *Guiry*, 31 A.D.3d at 71 (emphasis added). Even

3

setting aside *Locke's* misstatement of New York law, its rationale for differentiating the underlying shares from the options to purchase those shares is highly questionable. *See generally Mathias v. Jacobs*, 238 F. Supp. 2d 556, 574 n.12 (S.D.N.Y. 2002) (explaining that under universally accepted formula, "essential factors . . . driving the value of an option to purchase common stock" include "the stock price").  In any event, *Locke* is a clear outlier among district court decisions on the subject, and its holding is counter to the position of the New York State appellate courts on an issue of New York statutory interpretation.

        2.     *The Share Award was not based on Plaintiff's performance or productivity*

Plaintiff also repeatedly insists that the Share Award was both non-discretionary and vested, but neither allegation—even if assumed to be true for this motion—makes the Share Award "wages" or saves his Second Cause of Action.  *See Guiry*, 31 A.D.3d at 74 ("[E]ven if we assume (in plaintiff's favor) that Goldman had no discretion in determining whether to award equity-based compensation . . . the equity-based compensation still should not qualify as 'wages[.]'").  Plaintiff argues that the second tranche of the Share Award should have vested no later than January 31, 2017, but—even if we assume Plaintiff is correct for the moment—that still would have been more than two years after HSBC calculated the number of shares Plaintiff would receive on that particular vesting day (*see* Compl. ¶ 17).  In other words, regardless of whether the second tranche of the Share Award would have vested in January 2017 (as Plaintiff alleges) or May 2017 (as per the award documentation), its value would still bear no connection to Plaintiff's performance, and therefore it would not fall within the definition of "wages."  *See Guiry*, 31 A.D.3d at 73 ("[I]t is always possible that a deferred award of stock . . . will turn out to have no value, in the event the firm fails before the shares are delivered . . . .").  Plaintiff's arguments around when he believes the Share Award would have vested, therefore, have no impact on this motion.

### B. The Share Award Was Not "Wages" Because It Was an Incentive to Accept Employment

Plaintiff admits that the Share Award was an incentive to accept employment, not compensation for any work he actually performed for HSBC. (*See* Compl. ¶ 15.) He reiterates this admission throughout his opposition. (*See, e.g.*, Opp. Br. at 1 (describing the Share Award as "an incentive for Plaintiff to leave his position at Oppenheimer"); Opp. Br. at 2 (representing that the purpose of the Share Award was "to induce the Plaintiff to take the [HSBC] position").) Plaintiff nonetheless insists that the Share Award is "incentive compensation" and is therefore covered by Section 193. But simply labeling a payment "incentive compensation" says nothing about whether it falls within the definition of "wages" for purposes of the New York Labor Law. *See Guiry*, 31 A.D.3d at 73 (holding that "[d]eferred awards of stock" are not wages, but noting that they "plainly serve the function of giving employees an incentive to stay with the firm and to maximize the value of the firm's business").

Incentive compensation is only "wages" when the amount of compensation is tied to the employee's productivity. Compare *Hunter v. Deutsche Bank AG*, No. 0602791/2004, 2007 WL 4113676, *aff'd*, 56 A.D. 3d 274 (1st Dep't 2008) ("[T]he Labor Law's restrictive statutory definition of wages excludes Incentive Compensation that the employer bases on its profits or on other factors falling outside the scope of the employee's actual work."), with *Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525 (1st Dep't 2015) (affirming conclusion that bonus allegedly tied to plaintiff's results as division manager was "based upon services plaintiff rendered") (quotation omitted).

The cases on which Plaintiff relies in his opposition stand for the entirely uncontroversial (and, for purposes of this motion, irrelevant) proposition that Section 193 covers cash compensation in fixed-dollar amounts based on services rendered. *See, e.g.*, *Ryan v. Kellogg*

5

*Partners Institutional Servs.*, 19 N.Y.3d 1, 6 (2012) (analyzing "compensation for calendar year 2003 split into two parts, consisting of a salary of $175,000 and a guaranteed bonus of $175,000, which would be paid out in late 2003 or early 2004"). *Ryan* did not, as Plaintiff argues, involve stock options or an equity award. Likewise, *Tuttle v. George McQuesten Co.* addressed commission payments for sales the plaintiff made on behalf of his employer. *See* 227 A.D.2d 754, 754 (3d Dep't 1996) (analyzing "compensation plan" in which salary and commissions "in excess of $75,000 for any fiscal year [were] divided into three equal payments with one third being due for payment at end of year in which it is earned, one third payable at end of following year and final one third payable at end of next following year"). The compensation plan in *Tuttle* simply varied the timing of payment for earnings that were indisputably "wages." *See* 227 A.D. 2d at 756 (noting that Labor Law § 190(1) includes "earnings . . . for labor or services rendered" that are "determined on a . . . commission . . . basis"). Guaranteed cash bonuses and sales commissions are not at issue in this litigation, and are of an entirely different character both factually and legally than the equity award at issue here.

Plaintiff does not cite any court—federal or state—that treated shares of an employer's stock as "wages" for purposes of the Labor Law, much less a case treating those shares as "wages" when offered to an employee before he had worked a single day for the employer. Plaintiff concedes that the Share Award was not compensation for his "labor or services," N.Y. Lab. L. § 190(1), and he therefore cannot maintain a claim under Section 193.

II. **HSBC's Alleged Failure to Pay the Second Tranche of the Share Award is Not a "Deduction" Within the Meaning of Section 193**

   A. **Section 193 Does Not Cover An Alleged Wholesale Failures to Pay Wages**

Plaintiff misstates the purpose and reach of Section 193. As noted in the official compilation of the New York Statutes, present-day Section 193 derives from former Labor Law

6

section 197, added by the State Legislature in 1921 in Chapter 50 of the Consolidated Laws.  *See* N.Y. Lab. L. § 193, "Historical and Statutory Notes," "Derivation" (McKinney's 2015).  Section 197 of the 1921 Labor Law stated, in pertinent part:  "Charges for groceries, provisions or clothing shall not be a valid off-set in behalf of the employer against wages."  This first iteration of New York's wage deduction law was clearly directed at line-item offsets from wages actually paid—and not at an employer's wholesale failure to pay wages allegedly due on a certain date.  *See* L. 1921, c. 50 (adding Lab. L. § 197).

Former Labor Law section 197 was repealed in 1966, when the Legislature rewrote and reorganized Article 6 of the Labor Law.  *See* L. 1966, c. 548, § 2 (adding a new section 193, which is substantially similar to the present-day version of Section 193).  The initial version of Section 193 from 1966, as well as today's version of Section 193, gives examples of "deductions" as "payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, [and] payments for dues or assessments to a labor organization[.]"  *Id.*  Again clearly, the initial version of Section 193, as well as today's version of Section 193, was clearly directed at line-item offsets from wages actually paid—not at an employer's wholesale failure to pay wages allegedly due on a certain date.

Indeed, both historically and today, an entirely separate section of the Labor Law—section 191—addresses the broader obligation of an employer to pay wages when due.  That section, both when it was added to the law in 1966 and today, required (with respect to "clerical and other worker[s]") that they "shall be paid the wages earned in accordance with the agreed terms of employment."  *See* N.Y. Lab. L. 191(1)(d); L. 1966, c. 548, § 2.  Notably, the Legislature has always excluded from the coverage of Labor Law section 191 employees in a

7

bona fide executive, administrative, or professional capacity whose earnings are in excess of a certain weekly amount ($900 today), like Plaintiff.  *See* N.Y. Lab. L. §§ 191(1)(d), 190(7).

That Section 193 was never intended to address the wholesale failure to pay wages allegedly due on a certain date—as opposed to line-item deductions from wages that actually are paid—has been consistently recognized by the courts.  *See Perella Weinberg Partners LLC v. Kramer*, 153 A.D.3d 443, 449 (1st Dep't 2017) ("[A] wholesale withholding of payment is not a 'deduction' within the meaning of Labor Law § 193."); *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016) ("[A] plaintiff must allege a specific *deduction* from wages and not merely a *failure to pay* wages.") (emphasis added); *Gold v. Am. Med. Alert Corp.*, No. 14 Civ. 5485 (JFK), 2015 WL 4887525, at *5 (S.D.N.Y. Aug. 17, 2015) (dismissing plaintiff's Section 193 claim for remaining salary payments, and noting that "'deductions' are better understood as, and limited to, things like fines, payments, or other forms of pay docking"); *Monagle v. Scholastic, Inc.*, No. 06 Civ. 14342 (GEL), 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007) (dismissing Section 193 claim for underpayment of severance pay owed under a separation agreement, stating "Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages."); *Moras v. Marco Polo Network, Inc.,* No. 11 Civ. 2081 (PAE), 2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012) (no unlawful "deduction" claim where employee was paid less than agreed-upon wages).

### B.    Plaintiff's "Deduction" Theory is Implausible

Plaintiff's Second Cause of Action is based on the allegation that "HSBC unlawfully failed to pay" the second tranche of the Share Award.  (*See* Compl. ¶ 49.)  Notwithstanding this straightforward allegation, Plaintiff now argues that he "did not allege a wholesale refusal to pay."  (*See* Opp. Br. at 12.)  In Plaintiff's view (at least for purposes of this motion), the second tranche of the Share Award was a "deduction" from the Share Award because it was one of three

8

constituent payments.  (*Id.*)  Plaintiff does not provide any support for this distortion of Section 193, nor does he distinguish the controlling authority that is fatal to his claim.  This alleged failure to pay *any* part of an amount Plaintiff alleges was due on a certain date is simply not a "deduction" from wages that would fall within the ambit of Section 193.

In the face of the overwhelming authority that Section 193 does not apply to a wholesale failure to pay allegedly due compensation, Plaintiff falls back on cases that simply analyze the meaning of "wages" under Section 193—not whether a plaintiff has alleged a "deduction."  (*See* Opp. Br. at 13-14.)  Plaintiff misrepresents *Wachter v. Kim*, 82 A.D.3d 658, 663 (1st Dep't 2011), insisting that it was "patently absurd" for HSBC to point out that the appellate court in *Wachter* court did not address whether the plaintiff had alleged a "deduction" (Opp. Br. at 14).  As HSBC explained, however, on remand from the appellate court, the trial court in *Wachter* granted summary judgment on the plaintiff's Section 193 claim, noting that "the First Department did not address whether the non-payment of [plaintiff's] wages qualifies as a 'deduction from wages.'"  *Wachter v. Kim*, No. 650532/08, 2013 WL 144760 (Sup. Ct. N.Y. Cty. Jan. 11, 2013).  If that were not enough, the *Perella* court rejected the same argument Plaintiff makes here, writing that "a wholesale withholding of payment is not a 'deduction' within the meaning of Labor Law § 193" and that *"[t]his issue was not addressed by . . . this Court in Wachter v. Kim."* 153 A.D.3d at 449-50 (emphasis added).

Finally, Plaintiff resorts to arguing that *Ryan* supports his view, but the *Perella* court rejected that argument as well.  *See* 153 A.D.3d at 449-450 ("This issue [of whether a wholesale failure to pay wages constitutes a "deduction" under Section 193] was not addressed by the Court of Appeals in *Ryan v. Kellogg Partners Inst. Servs*.[.]").  Accordingly, *Wachter* and *Ryan* are no help to Plaintiff's position that HSBC's alleged failure to pay the second tranche of the

Share Award was a "deduction." Plaintiff here, like the plaintiff in *Gold*, "points to no case law . . . interpreting [*Wachter* and *Ryan*] as resolving the issue of what counts as a 'deduction' in favor of Plaintiff's construction." *Gold*, 2015 WL 4887525 at *4.

The Court need not look further than Plaintiff's allegation that "HSBC unlawfully failed to pay" the second tranche of the Share Award (Compl. ¶ 49) to dismiss Plaintiff's Second Cause of Action. In light of the uniform authority rejecting analogous Section 193 claims, Plaintiff has not stated a claim on which relief can be granted.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Second Cause of Action fails as a matter of law, and HSBC respectfully requests that the Court dismiss the Second Cause of Action with prejudice.

Dated: New York, New York
October 27, 2017

                                  PROSKAUER ROSE LLP

                                  /s/ *Allan S. Bloom*
                                  By:    Allan S. Bloom
                                            Rachel S. Philion

                                  Eleven Times Square
                                  New York, New York 10036
                                  (212) 969-3000
                                  abloom@proskauer.com
                                  rphilion@proskauer.com

                                  *Attorneys for Defendant*
                                  HSBC BANK USA, N.A.