UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------

| | |
|---|---|
| STEPHEN BEACH, | : |
| Plaintiff, | : 17cv5153 |
| | : OPINION & ORDER |
| -against- | : |
| HSBC BANK USA, N.A., | : |
| Defendant. | : |

------------------------------------------------

WILLIAM H. PAULEY III, United States District Judge:

    HSBC Bank USA, N.A. ("HSBC") moves to dismiss Stephen Beach's claim alleging HSBC's failure to pay wages under New York Labor Law ("NYLL") § 193. Beach seeks at least $35,000 representing payment of a second tranche of restricted HSBC stock that he received at the outset of his employment (the "Second Tranche"). Having carefully considered both parties' thorough briefs, oral argument is unnecessary, and this Court resolves the motion on submission. For the reasons that follow, HSBC's motion to dismiss the Second Cause of Action is granted.

### BACKGROUND

    This dispute centers on the compensation that HSBC allegedly owes Beach after it terminated his employment in February 2017. Prior to Beach's decision to join HSBC, he was employed at Oppenheimer Asset Management, Inc. ("Oppenheimer") as its Chief Compliance Officer. (Complaint ("Compl."), ECF No. 1, Ex. A, ¶ 5.) In October 2014, HSBC began recruiting Beach for the position of US Head of Regulatory Compliance, Asset Management. (Compl. ¶ 6.) By November 2014, Beach had agreed to accept HSBC's employment offer. (Compl. ¶ 7.)

Beach's decision to depart Oppenheimer for HSBC around the end of the 2014 calendar year meant that he would forfeit certain remuneration—namely, his annual cash bonus and previous grants of restricted Oppenheimer stock that had not vested at the time of his departure.  (Compl. ¶ 8.)  To induce Beach to join HSBC at the beginning of 2015, the bank offered Beach a package that accounted for the compensation he would forego at Oppenheimer.  (Compl. ¶ 9.)  HSBC agreed to pay Beach: (1) a guaranteed bonus for 2014 in stock and cash equivalent to the bonus he would have received from Oppenheimer; (2) a restricted stock award of HSBC Holdings plc stock reflecting a value approximately equal to Beach's unvested Oppenheimer stock; and (3) future yearly bonuses of approximately $155,000 to $160,000.  (Compl. ¶¶ 9–10.)  The first two components of this compensation package were memorialized in an employment agreement between Beach and HSBC (the "Employment Agreement").  (Compl. ¶¶ 15–17.)

With respect to HSBC's agreement to grant restricted HSBC stock, the Employment Agreement states, in relevant part:

> [HSBC] will recommend [Plaintiff] for an exceptional one-off allocation of HSBC Holdings plc ordinary $0.50 shares to the value of USD $104,587.00 (the "Incentive to Join Share Award") . . . . [T]he Incentive to Join Share Award shall grant as soon as practicable following the Commencement Date and will vest in these proportions, 33%, 33% and 34% on each subsequent anniversary from the date of the grant.  The number of HSBC plc ordinary $0.50 shares to be granted will be calculated based upon the Incentive to Join Share Award value using the closing middle market quotation of HSBC shares on January 5, 2015.

(Compl. ¶ 17.)  The Employment Agreement further provides that "[a]ny installment of the Incentive to Join Shares Award will not vest where, prior to or on the relevant vesting date, you have resigned from employment with [HSBC] or have been terminated for cause."  (Compl. ¶ 17.)

On January 5, 2015, Beach began his employment at HSBC. (Compl. ¶ 19.) Five months later, in May 2015, HSBC granted the restricted stock award. (Compl. ¶ 24.) In 2016, pursuant to the terms of the Employment Agreement, the first 33% of the restricted stock award vested. (Compl. ¶ 26.) Though the Second Tranche was scheduled to vest in May 2017—the second anniversary from the date of the grant—Beach was never paid those shares because he was terminated from the bank in February 2017. (Compl. ¶¶ 33, 35.)

DISCUSSION

All well-pleaded allegations of Beach's complaint are accepted as true and considered in the light most favorable to him. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). To withstand a Rule 12(b) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937. 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The core issue in HSBC's motion is whether the restricted, unvested HSBC shares awarded to Beach at the outset of his employment constitute "wages" under the NYLL such that HSBC's failure to pay the Second Tranche in 2017 constitutes a violation of NYLL § 193. Section 193 specifically provides that "[n]o employer shall make any deduction from the wages of an employee . . . ." The NYLL further defines the term "wages" as "the earnings of an employee for <u>labor or services rendered</u>, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y.L.L. § 190 (emphasis added).

HSBC contends that its decision to grant the restricted stock was made solely to induce Beach to leave Oppenheimer for HSBC, not to compensate him for his work performance. (See HSBC Memo. of Law in Support of Motion to Dismiss ("Mot."), ECF No.

3

17, at 5.) Additionally, even if the stock award qualified as a "wage," HSBC argues that the NYLL applies only to an unlawful deduction of wages. HSBC characterizes its decision to withhold payment of the Second Tranche as a failure to pay, thus removing it from the ambit of the statute. (Mot. at 8.)

Beach counters that equity-based or incentive compensation like the restricted stock award at issue may be considered a "wage" if it was earned and vested prior to termination. (Beach Memo. of Law in Opposition to Motion to Dismiss ("Opp."), ECF No. 19, at 8.) Beach emphasizes the non-discretionary, defined nature of the stock award: "the amount of shares that [he] was to receive was fixed by the price of HSBC plc stock on January 5, 2016, and not based upon the price of HSBC plc stock." (Opp. at 8–9.) In other words, Beach claims that the restricted stock "was not contingent on anything, rather it was set to vest in one-third tranches, and the tranche sought in this action was already vested." (Opp. at 9.)

"Deferred awards of stock and stock options, like those at issue here, constitute incentive compensation, since they plainly serve the function of giving employees an incentive to stay with the firm and to maximize the value of the firm's business." Guiry v. Goldman Sachs & Co., 31 A.D. 3d 70, 73 (1st Dep't 2006). Restricted stock that vests over time is initially granted in quantities equal to a fixed value—such as the percentage of one's total compensation or, as here, the amount of Oppenheimer stock that had not vested at the time Beach left for HSBC. But the "ultimate value of such equity-based compensation would depend on [HSBC's] stock price after the rights vested." Guiry, 31 A.D. 3d at 73. Such compensation "bears the hallmark of incentive compensation—its value to the recipient depends on the firm's overall financial success," and not simply on the employee's "personal productivity." Guiry, 31 A.D. 3d at 73. Thus, by the time the Second Tranche vested—be it in January 2017 under Beach's theory, or

4

May 2017 as advanced by HSBC—the value of those shares could have substantially diminished or increased irrespective of Beach's own performance.  In fact, Beach could have performed poorly months before the Second Tranche vested and still would have received the shares as long as he remained employed.

Beach attempts to re-characterize the nature of this compensation by citing to a provision of the Employment Agreement—that "[t]he number of HSBC plc ordinary $0.50 shares to be granted will be calculated . . . using the closing middle market quotation of HSBC shares on January 5, 2015."  (Compl. ¶ 17.)  He relies on this language to support the argument that the value of his stock was fixed as of January 5, 2015—his first day of work—thus distinguishing the nature of this stock award from the typical equity-based compensation that is tied largely to the employer's financial performance or condition.  But Beach conflates the quantity of the restricted stock award with the value of those shares.  Indeed, while the Employment Agreement provides a fixed number of shares, it says nothing about their value, which is "contingent and dependent, at least in part, on the financial success of the business enterprise."  Truelove v. Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 223–24 (N.Y. 2000); Econn v. Barclays Bank PLC, 2010 WL 9008868, at *5 (S.D.N.Y. June 10, 2010) ("Unvested, contingent rights to company stock and unvested options to purchase company stock do not represent wages for purposes of the Labor Law because the ultimate value of such equity-based compensation would depend on the employer's stock price after the rights vested, at the time of delivery.").

Beach's position misses the mark in another fundamental way—they were not granted in connection with "labor or services rendered."  N.Y.L.L. § 190.  HSBC's decision to award such stock was predicated on its efforts to induce, recruit, and retain Beach as an

employee. "Equity-based awards to incentivize employees <u>to remain with an employer</u> do not constitute 'wages' under the NYLL." <u>Gilman v. Marsh & McLennan Cos., Inc.</u>, 868 F. Supp. 2d 118, 135 (S.D.N.Y. 2012) (emphasis added).

The cases cited by Beach do not change the calculus in any way. Beach relies heavily on <u>Locke v. Tom James Co.</u>, 2013 WL 1340841, at *6 (S.D.N.Y. Mar. 25, 2013), which recognized that stock options may be considered wages under the Labor Law. But the stock options at issue in that case were granted "directly based on [plaintiff's] own sales performance." <u>Locke</u>, 2013 WL 1340841, at *6. Thus, "to the extent that [the plaintiff] earned the options through his own performance . . . [he] is entitled to those stock options as wages." <u>Locke</u>, 2013 WL 1340841, at *6. For similar reasons, <u>Ryan v. Kellogg Partners Institutional Serv.</u>, 19 N.Y.3d 1 (N.Y. 2012) is unhelpful to Beach's position. In <u>Ryan</u>, the unpaid compensation at issue was a bonus that the plaintiff had already earned based on his job performance but agreed to defer payment until a later date. The facts in <u>Locke</u> and <u>Ryan</u> are absent here—namely, that HSBC's decision to grant a stock award was tied directly to Beach's job performance. Indeed, Beach's position is undermined by the allegations in the complaint, which assert that HSBC gave him the stock "to induce [him] to leave Oppenheimer and join HSBC." (Compl. ¶ 9.)

Finally, because the restricted stock award is not a "wage," it is unnecessary to consider whether HSBC's decision to withhold payment of the Second Tranche constitutes an unlawful deduction under § 193.

## CONCLUSION

For the foregoing reasons, HSBC's motion to dismiss the New York Labor Law claim in the Second Cause of Action is granted.  The Clerk of Court is directed to terminate the motion pending at ECF No. 15.

Dated: November 20, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.